# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| STINGRAY IP SOLUTIONS, LLC,<br><br>               Plaintiff,<br><br>v.<br><br>TP-LINK TECHNOLOGIES CO., LTD.,<br>TP-LINK CORPORATION LIMITED, and<br>TP LINK INTERNATIONAL LTD.,<br><br>               Defendants. | Civil Action No. 2:21-cv-45-JRG<br>Civil Action No. 2:21-cv-46-JRG<br>**JURY TRIAL DEMANDED** |

## DEFENDANTS' OPPOSED MOTION UNDER 28 U.S.C. 1404(a) TO TRANSFER THE ACTION TO THE CENTRAL DISTRICT OF CALIFORNIA

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ...................................................................................................................1

II. FACTUAL BACKGROUND ................................................................................................2

    A. Defendant TP-Link China Has No Connection to the EDTX..............................2

    B. Defendant TP-Link Hong Kong Has No Connection to the EDTX .....................3

    C. Non-Party TP-Link USA Is Located in the CDCA ..............................................3

    D. Stingray's Ultimate Parent Acacia Has Witnesses and Evidence in the CDCA ...................................................................................................................4

    E. Stingray Itself Has Important Connections to the CDCA....................................4

III. LEGAL STANDARDS ........................................................................................................5

IV. THIS CASE SHOULD BE TRANSFERRED TO THE CDCA .........................................6

    A. This Action Could Have Been Brought in the CDCA .........................................6

    B. The CDCA Is Clearly More Convenient Than the EDTX ...................................7

        1. The Cost of Attendance of Willing Witnesses Favors Transfer ................7

        2. The Relative Ease of Access to Source of Proof Favors Transfer.............8

        3. The Availability of Compulsory Process Favors Transfer ........................9

        4. The Local Interest Favors Transfer...........................................................10

        5. Court Congestion Is Neutral ......................................................................11

        6. The "Other Practical Problems" Factor Favors Transfer..........................11

        7. All Remaining Factors Are Neutral ..........................................................12

V. CONCLUSION......................................................................................................................12

CERTIFICATE OF CONFERENCE........................................................................................14

CERTIFICATE OF SERVICE .................................................................................................14

i

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*10Tales, Inc. v. TikTok Inc.*,
   No. 6:20-cv-00180-ADA, 2021 WL 2043978 (W.D. Tex. May 21, 2021) ................. 7, 8, 9, 10

*Data-Scape, Ltd. v. Dell Techs., Inc.*,
   No. 6:19-CV-00129-ADA, 2019 WL 4254069 (W.D. Tex. June 7, 2019) .............................. 8

*Fintiv, Inc. v. Apple Inc.*,
   No. 6:18-cv-00372-ADA, 2019 WL 4743678 (W.D. Tex. Sept. 13, 2019) ........................... 10

*Haliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*,
   921 F.3d 522 (5th Cir. 2019).................................................................................................. 1

*In re Acer Am. Corp.*,
   626 F.3d 1252 (Fed. Cir. 2010) .............................................................................................. 6

*In re Apple Inc.*,
   979 F.3d 1332 (Fed. Cir. 2020) ........................................................................................... 6, 8

*In re Apple, Inc.*,
   581 Fed. App'x 886 (Fed. Cir. 2014) .................................................................................... 10

*In re Genentech, Inc.*,
   566 F.3d 1338 (Fed. Cir. 2009) ..................................................................................... 6, 8, 11

*In re Hoffmann-La Roche Inc.*,
   587 F.3d 1333 (Fed. Cir. 2009) .......................................................................................... 2, 11

*In re Juniper Networks, Inc.*,
   14 F.4th 1313 (Fed. Cir. 2021).............................................................................................. 11

*In re Netflix, Inc.*,
   No. 2022-110, 2022 WL 167470 (Fed. Cir. Jan. 19, 2022) .................................................. 11

*In re Samsung Elecs. Co., Ltd.*,
   2 F.4th 1371 (Fed. Cir. 2021).................................................................................... 2, 11, 12

*In re Volkswagen of Am., Inc.*,
   545 F.3d 304 (5th Cir. 2008).......................................................................................... 5, 6, 8

*Uniloc USA, Inc. v. Apple Inc.*,
   No. 2:17-CV-00258-JRG, 2017 WL 11553227 (E.D. Tex. Dec. 22, 2017) ............... 6, 7, 8, 10

**<u>Statutes</u>**

28 U.S.C. § 1404(a) .................................................................................................. 1, 5, 8, 12

## I.    INTRODUCTION

Defendants TP-Link Technologies Co., Ltd. ("TP-Link China") and TP-Link Corporation Limited f/k/a TP-Link International Ltd. ("TP-Link Hong Kong") (collectively, "TP-Link Defendants") previously moved to dismiss this action for lack of personal jurisdiction and insufficient service of process. Case No. 2:21-cv-45-JRG at Dkt. 23; Case No. 2:21-cv-46-JRG at Dkt. 23.[1] That motion is pending. Without waiving their defenses to personal jurisdiction and insufficient service of process, the TP-Link Defendants now respectfully move under 28 U.S.C. § 1404(a) to transfer this action to the Central District of California ("CDCA").[2]

The true dispute in this case is between two companies based in the CDCA. Plaintiff Stingray IP Solutions, LLP ("Stingray") is an ephemeral Texas entity controlled by a CDCA parent. And the non-party company that actually sells, offers to sell, and imports the accused products—TP-Link USA Corporation ("TP-Link USA")—is located in the CDCA. Stingray's filing of this case in the Eastern District of Texas ("EDTX") is a textbook case of attempted venue manipulation. The Court should send this case to the CDCA where it clearly belongs.

Specifically, neither of the named TP-Link Defendants has any connection to the EDTX. Stingray effectively recognizes this, as Stingray alleges jurisdiction based on the purported activities of non-party TP-Link USA. That non-party—which Stingray references dozens of times in the Complaint—is headquartered in the CDCA and has no place of business in this

---

[1] Defendants TP-Link International Ltd. and TP-Link Corporation Limited are the same entity, as TP-Link International Ltd. changed its name to TP-Link Corporation Limited in 2020. *See* Declaration of Jianmei Sun ("Sun Decl.") at ¶ 2.

[2] A "non-resident defendant may participate in litigation without submitting to the court's jurisdiction so long as it maintains its objection to personal jurisdiction." *Haliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 540 (5th Cir. 2019)
.

District. But Stingray did not sue that company because venue in the EDTX would be manifestly improper under *TC Heartland*. This Court should not endorse such "efforts to manipulate venue," and should either dismiss the case for lack of jurisdiction or transfer it to the CDCA. *In re Samsung Elecs. Co., Ltd.*, 2 F.4th 1371, 1377 (Fed. Cir. 2021) ("[W]e are not bound by a plaintiff's efforts to manipulate venue.").

Further, Plaintiff Stingray itself has no material connection to the EDTX. Stingray was formed as an entity shortly before filing suit and is an indirect subsidiary of longstanding patent assertion entity Acacia Research Corporation ("Acacia"). Acacia's largest office is in the CDCA (Irvine, CA). Stingray's CEO is also the Chief IP Officer of Acacia, and he is located in the CDCA. By all indications, the recent formation of Stingray in the EDTX is merely "a fiction which appears to have been created to manipulate the propriety of venue." *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1337 (Fed. Cir. 2009) (directing transfer). When, as here, a plaintiff's incorporation, office, and documents in Texas "were recent, ephemeral, and a construct for litigation," they are entitled to no weight in the venue analysis. *In re Samsung Elecs. Co., Ltd.*, 2 F.4th at 1378 (directing transfer).

In short, the EDTX has no legitimate interest in this case. With *none* of the parties having any material connection to the EDTX; with non-party TP-Link USA of the CDCA being the central figure in Stingray's jurisdictional and infringement theories; and with Stingray's CEO and its ultimate parent Acacia being located in the CDCA, it would be clearly more convenient to litigate in the CDCA. The Court should therefore transfer venue.

## II.     FACTUAL BACKGROUND

### A.     Defendant TP-Link China Has No Connection to the EDTX

TP-Link China is a privately held corporation organized under the laws of China, with its headquarters and principal place of business in Shenzhen, China. Declaration of Yanmei Zhang

("Zhang Decl.") at ¶ 2.  TP-Link China does not have any employees or agents in Texas.  *Id*. at ¶ 3.  Nor does it own, lease, or operate any offices or other facilities in Texas.  *Id*.  TP-Link China does not design, manufacture, sell, or offer to sell any products in Texas.  *Id*. TP-Link China does not ship products to Texas, and it does not conduct any marketing or advertising in, or directed toward, Texas.  *Id*.

      **B.**      **Defendant TP-Link Hong Kong Has No Connection to the EDTX**

TP-Link Hong Kong is a privately held corporation organized under the laws of Hong Kong, with its headquarters and principal place of business in Hong Kong.  Declaration of Jianmei Sun ("Sun Decl.") at ¶ 3.  TP-Link Hong Kong does not have any employees or agents in Texas.  *Id*.  Nor does it own, lease, or operate any offices or other facilities in Texas.  *Id*.  TP-Link Hong Kong does not design, manufacture, sell, or offer to sell any products in Texas.  *Id*. TP-Link Hong Kong does not ship products to Texas, and it does not conduct any marketing or advertising in, or directed toward, Texas.  *Id*.

      **C.**      **Non-Party TP-Link USA Is Located in the CDCA**

In the Complaint, Stingray repeatedly accuses non-party TP-Link USA of importing and selling the accused products in the United States.  But TP-Link USA is a California corporation with its headquarters and principal place of business in the CDCA at Irvine, CA.  Zhang Decl. at ¶ 4.  TP-Link USA is solely responsible for importing, marketing, advertising, offering to sell, and selling "TP-Link branded" products in the United States, including the accused products in this case.  *Id*.  TP-Link USA is a wholly owned subsidiary of non-party TP-Link UK, Ltd., and not a subsidiary of either Defendant in this case.  *Id*.  Neither of TP-Link China or TP-Link Hong Kong directs or controls the activities of TP-Link USA in importing, marketing, advertising, offering to sell, or selling TP-Link branded products in the United States.  *Id*.  As such, per Stingray's own allegations, TP-Link USA has the most relevant witnesses to this case,

and there is nothing to suggest that there is any physical, geographical location from which TP-Link USA carries out business other than the CDCA.

### D. Stingray's Ultimate Parent Acacia Has Witnesses and Evidence in the CDCA

Stingray's ultimate parent Acacia's largest office is located in the CDCA, close to TP-Link USA's headquarters in Irvine, CA.  Mayle Decl. Ex. 1 (Acacia's Sept. 30, 2021 SEC Form 10-Q) at 27 ("On June 7, 2019, we entered into a building lease agreement … we have leased approximately 8,293 square feet of office space in Irvine, California.").[3]  Stingray recently acquired the patents-in-suit from Acacia Research Group LLC (which is itself also a subsidiary of Acacia), and Marc Booth signed the assignment document as CEO of Acacia Research Group LLC *and* as CEO of Stingray.  Mayle Decl. Ex. 2 (Patent Assignment beginning at Reel: 053326, Frame: 0636) at Frame 0642.  Marc Booth presents himself as "Chief IP Officer at Acacia Research," and lists his address as Newport Beach, CA, which is in the CDCA.  Mayle Decl. Ex. 3.  Mr. Booth has been "[t]asked by Acacia's new Board of Directors with managing and growing Acacia's patent licensing business" and is "[r]esponsible for all aspects of the business, including portfolio analysis, acquisition and licensing."  *Id*.  Further, Acacia's "Management Team" webpage identifies Mr. Booth as "the Chief IP Officer at Acacia Research Corporation."  Mayle Decl. Ex. 4.  Moreover, the "organizer" that signed Stingray's Certificate of Formation, Jennifer Graff, lists her address as being in the CDCA in Irvine, CA.  Mayle Decl. Ex. 5 at 6.  Ms. Graff is also Acacia's "Director of Compliance & Corporate Secretary."  Mayle Decl. Ex. 6.  For all these reasons, Acacia and its witnesses are highly relevant third-party witnesses with likely relevant evidence in Acacia's Irvine, CA office and/or in Newport Beach, CA.

### E. Stingray Itself Has Important Connections to the CDCA

---

[3] Exhibits to this motion are attached to the Declaration or Edward J. Mayle ("Mayle Decl.").

Stingray was formed on April 29, 2020, shortly before it filed suit in this case. Mayle Decl. Ex. 5. And as mentioned previously, the "organizer" that signed Stingray's Certificate of Formation, Jennifer Graff, is located in the CDCA at Irvine, CA. *See Section II.D*, *supra*. Ms. Graff is also Acacia's "Director of Compliance & Corporate Secretary." *See id*. Ms. Graff is a potential Stingray witness and likely stores evidence in the CDCA where she lives and works.

Further, as also mentioned previously, Stingray's CEO Marc Booth is located in the CDCA. *See* Section II.D, *supra*. He is also the CEO of Acacia Research Group and the Chief IP Officer at Acacia. *See id*. And again, Mr. Booth signed the assignment documents for the patents-in-suit, and is in charge of managing Acacia's—and thus Stingray's—"patent licensing business." *Id*. Mr. Booth is the one person that is responsible "for all aspects of the business, including portfolio analysis, acquisition and licensing." *See id*. Given this, it is undeniable that Mr. Booth is a highly relevant party witness (and a third-party witness of Acacia), and he likely stores relevant evidence in the CDCA where he lives and works.

## III.    LEGAL STANDARDS

A district court may transfer a case to "any other district or division where it might have been brought" if the transfer is "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. §1404(a). A transfer of venue analysis has two steps. First, courts decide "whether a civil action 'might have been brought' in the destination venue." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) (quoting 28 U.S.C. §1404(a)). Second, courts consider eight factors to decide whether transfer would promote the convenience of the parties and witnesses and/or the interest of justice. *Id*. at 314-15.[4]

---

[4] *Id*. at 314-15 (the transfer factors include "(1) the relative ease of access of sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; (4) all other practical problems that make trial of a case easy,

5

As one particularly relevant factor in patent cases, "the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Apple Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020) (quoting *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009)).

If the proposed transferee forum is "clearly more convenient" than the current forum, the case should be transferred. *Volkswagen*, 545 F.3d at 315; *see also In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010); *Uniloc USA, Inc. v. Apple Inc.*, No. 2:17-CV-00258-JRG, 2017 WL 11553227, at *10 (E.D. Tex. Dec. 22, 2017) ("[T]he Court finds that the significant number of both party and non-party witnesses in California have shown that the convenience of the witnesses weighs strongly in favor of transfer.").

## IV.    THIS CASE SHOULD BE TRANSFERRED TO THE CDCA

This case should be transferred to the CDCA because (i) none of the parties have any material connection to the EDTX; (ii) Stingray and the relevant third-party companies, including TP-Link USA and Acacia, have their witnesses and evidence in the CDCA; and (iii) this Court should not condone Stingray's attempt to manipulate venue by deliberately omitting from this lawsuit the undisputed importer and seller of the accused products in the United States.

### A.    This Action Could Have Been Brought in the CDCA

In the Complaint, Stingray alleges that the EDTX has personal jurisdiction over the TP-Link Defendants under the "stream of commerce" theory because TP-Link China and TP-Link Hong Kong deliver the accused products to TP-Link USA in the United States. The TP-Link

---

expeditious and inexpensive; (5) the administrative difficulties flowing from court congestion; (6) the local interest in having localized interests decided at home; (7) the familiarity of the forum with the law that will govern the case; and (8) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law").

Defendants dispute that allegation and have moved to dismiss for lack of personal jurisdiction in this District. Moreover, in their motion to dismiss, the TP-Link Defendants have already stated that they agree to submit to jurisdiction in the CDCA. Accordingly, the "threshold requirement" is met, and the Court should decide whether the CDCA is a clearly more convenient forum. *Uniloc USA, Inc.*, 2017 WL 11553227, at *5.[5]

### B. The CDCA Is Clearly More Convenient Than the EDTX

The CDCA is clearly more convenient. Several factors strongly favor transfer, including the convenience of the witnesses, the relative ease of obtaining evidence, the availability of compulsory process for third-party witnesses , the local interest, and the public policy that plaintiffs like Stingray should not be allowed to manipulate venue by omitting the key party. At most, the other factors are neutral. And no factor favors keeping this action in the EDTX.

#### 1. The Cost of Attendance of Willing Witnesses Favors Transfer

First, absent transfer to the CDCA, Stingray's likely party witnesses (including its CEO Marc Booth and Jennifer Graff, both of whom also work for Acacia) and the known third-party witnesses from TP-Link USA and Acacia would have to travel from the CDCA where they live and work to testify at trial in the EDTX. *See* Section II.C-E, *supra*. The extra travel time and expense associated with testifying makes the EDTX clearly less convenient for these many witnesses, as it would disrupt their family and business lives, which are centered in the CDCA. *10Tales, Inc. v. TikTok Inc.*, No. 6:20-cv-00180-ADA, 2021 WL 2043978, at *4 (W.D. Tex. May 21, 2021) ("Rather than time-consuming and costly travel being inevitable regardless of venue, most witnesses here are faced with either extreme—the NDCA as arguably the most convenient federal forum for such witnesses, or this District located over 1,300 miles further."); *Uniloc USA,*

---

[5] If the CDCA lacks personal jurisdiction, then so too does this Court.

*Inc.*, 2017 WL 11553227, at *9 (ordering transfer where "Apple has named multiple party and non-party witnesses residing within the Northern District of California, while Uniloc has named only one employee who resides part-time in the Eastern District of Texas."). This is the "single most important factor," and it strongly favors transfer of this action to the CDCA. *Genentech*, 566 F.3d at 1343 (citation omitted).

Second, neither of TP-Link China or TP-Link Hong Kong has *any* witnesses or evidence in the United States. If TP-Link Defendant witnesses are forced to travel to the United States for trial, trial in the CDCA would be more convenient because the Los Angeles International Airport is relatively closer to Asia than any airport in Texas. *In re Volkswagen of Am., Inc.*, 545 F.3d at 317 ("When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled.").

### 2. The Relative Ease of Access to Source of Proof Favors Transfer

The relative ease of access to sources of proof is another important factor that favors transfer here. *In re Apple Inc.*, 979 F.3d at 1340 ("[T]he bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location.") (quoting *In re Genentech, Inc.*, 566 F.3d at 1345). Under this factor, "the question is relative ease of access, not absolute ease of access." *Data-Scape, Ltd. v. Dell Techs., Inc.*, No. 6:19-CV-00129-ADA, 2019 WL 4254069, at *2 (W.D. Tex. June 7, 2019) (citation omitted); *see also Genentech*, 566 F.3d at 1345. There is significant evidence located in the CDCA, and *zero evidence* identified as residing in the EDTX. So this factor also strongly favors transfer. *10Tales, Inc.*, 2021 WL 2043978, at *2.

Specifically, neither of the TP-Link Defendants has any evidence in the EDTX. *See* Section II.A-C, *supra*. TP-Link USA located in the CDCA is solely responsible for importing,

8

marketing, advertising, offering to sell, and selling TP-Link branded products in the United States, including the accused products. Zhang Decl. at ¶ 4. The evidence relating to marketing, sales, damages, and Stingray's alleged jurisdictional and infringement theories thus resides in the possession, custody, and control of a non-party located in the CDCA. *Id*.

What is more, important parts of Stingray's own evidence are likely located in the CDCA. As mentioned previously, Stingray recently acquired the patents-in-suit from Acacia Research Group LLC (which is itself also a subsidiary of Acacia), and Marc Booth signed the assignment document as CEO of Acacia Research Group LLC *and* as CEO of Stingray. *See* Sections II.D-E, *supra*. Marc Booth presents himself as "Chief IP Officer at Acacia Research," and lists his address as Newport Beach, CA, which is located in the CDCA. *Id*. Mr. Booth has been "[t]asked by Acacia's new Board of Directors with managing and growing Acacia's patent licensing business" and is "[r]esponsible for all aspects of the business, including portfolio analysis, acquisition and licensing." *Id*. Further, Acacia's "Management Team" webpage identifies Mr. Booth as "the Chief IP Officer at Acacia Research Corporation." *Id*. Moreover, the "organizer" that signed Stingray's Certificate of Formation, Jennifer Graff, lists her address as being in the CDCA in Irvine, CA. *Id*. Ms. Graff is also Acacia's "Director of Compliance & Corporate Secretary." *Id*.

For all of these reasons, access to proof also strongly favors transfer to the CDCA. *10Tales, Inc.*, 2021 WL 2043978, at *2 ("While TikTok may generate or store physical documentation at locations in other districts, the physical documentation relating to the substantive focus of the complaint is likely to come from TikTok's operations in California.").

### 3. The Availability of Compulsory Process Favors Transfer

This factor also strongly favors transfer. This factor "considers the availability of compulsory process to secure the attendance of witnesses, particularly non-party witnesses

whose attendance may need to be secured by a court order." *Fintiv, Inc. v. Apple Inc.*, No. 6:18-cv-00372-ADA, 2019 WL 4743678, at *5 (W.D. Tex. Sept. 13, 2019). "This factor will weigh heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue." *In re Apple, Inc.*, 581 Fed. App'x 886, 889 (Fed. Cir. 2014).

That is the case here because far more non-party witnesses are located in the CDCA than in the EDTX. *See* Sections II.C, D-E, *supra*. These witnesses include, for example:

- Corporate representatives from Stingray's ultimate parent, Acacia: including people that can testify about Stingray's recent formation; Stingray's recent assignment of the patents-in-suit; Acacia's patent licensing and litigation business model; and Acacia's comparable licenses, which are important to a consideration of a reasonable royalty in this case. *See* Sections II.D-E, *supra*.

- Corporate representatives from TP-Link USA: including people that can testify about importation of the accused infringing products, and marketing and sales of the accused infringing products in the United States. *See* Section II.C, *supra*.

Indeed, as discussed above, dozens of allegations in Stingray's own Complaint center on non-party TP-Link USA. Thus, per Stingray's own allegations, non-party TP-Link USA is critical to Stingray's jurisdictional, infringement, and damages theories. So this factor also strongly favors transfer. *10Tales, Inc.*, 2021 WL 2043978, at *3 ("The allegations set forth in 10Tales' complaint implicates third-party entities such as Google, Apple, and various social media companies all of which are well-known to have strongest presence in California."); *see also Uniloc USA, Inc*, No. 2017 WL 11553227, at *6-*7 (finding availability of compulsory process in California favors transfer).

    **4.**  **The Local Interest Favors Transfer**

The local interest factor also favors transfer because the CDCA has a significant interest in the outcome of this case. CDCA is home to TP-Link USA, a significant business that could be impacted by this case, and also home to employees whose livelihoods also could be impacted. And Stingray itself has a material presence in the CDCA, as its CEO, its organizer, and its ultimate parent Acacia are all located there. *See* Sections II.D-E, *supra*. Stingray was only recently formed in the EDTX, and when a plaintiff's incorporation, office, and documents in Texas "were recent, ephemeral, and a construct for litigation" like here, they are entitled to no weight. *In re Samsung Elecs. Co., Ltd.*, 2 F.4th at 1378 (directing transfer). The EDTX has no legitimate interest in this case, and the recent formation of Stingray in the EDTX is merely "a fiction which appears to have been created to manipulate the propriety of venue." *In re Hoffmann-La Roche Inc.*, 587 F.3d at 1337 (directing transfer).

### 5.  Court Congestion Is Neutral

There is no meaningful difference in the time to trial in the EDTX versus the CDCA. In particular, as of December 31, 2021, the median time from filing to trial in civil cases was 23.0 months in the EDTX and 24.2 months in the CDCA. *See* Mayle Decl. Ex. 7. So this factor is neutral. Moreover, when, as here, "other relevant factors weigh in favor of transfer or are neutral, 'then the speed of the transferee district court should not alone outweigh those other factors.'" *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1322 (Fed. Cir. 2021) (quoting *In re Genentech, Inc*. 566 F.3d 1338, 1347 (Fed. Cir. 2009)). And as the Federal Circuit recently found, such time-to-trial statistics "are plainly insufficient to warrant keeping this case" in the EDTX "given the striking imbalance favoring transfer based on the other convenience factors." *In re Netflix, Inc.*, No. 2022-110, 2022 WL 167470, at *5 (Fed. Cir. Jan. 19, 2022).

### 6.  The "Other Practical Problems" Factor Favors Transfer

11

As discussed in TP-Link Defendants' motion to dismiss, this Court does not have personal jurisdiction, but the TP-Link Defendants have agreed to suit in the CDCA where TP-Link USA is located. Moreover, TP-Link USA could be joined in the CDCA, but cannot be joined here because it has no regular and established place of business in the EDTX. Transferring the case would avoid having to decide the contested issues of jurisdiction.

Further, this Court should not allow Stingray to manipulate venue by deliberately omitting TP-Link USA from suit while, at the same time, using TP-Link USA as the basis for alleged jurisdiction against TP-Link China and TP-Link Hong Kong. So if the Court does not dismiss this case outright, it should transfer it to the CDCA. *In re Samsung Elecs*, 2 F.4th at 1377 ("[W]e are not bound by a plaintiff's efforts to manipulate venue."); *id*. at 1379 ("[D]isregarding this manipulation," plaintiff "could have filed suit in the Northern District of California").

### 7. All Remaining Factors Are Neutral

The familiarity of the forum with the law factor is neutral because both forums have experience and expertise in patent law. And the TP-Link Defendants are unaware of any issues related to conflicts of laws or the application of foreign law.

## V. CONCLUSION

If this Court does not grant the pending motion to dismiss the action for lack of personal jurisdiction or improper service of process, it should transfer the case to the CDCA under 28 U.S.C. §1404(a).

| | |
|---|---|
| Dated: February 25, 2022 | Respectfully submitted,<br><br>/s/ *Melissa R. Smith*_____<br>Steven D. Moore<br>(Eastern District of Texas Member)<br>KILPATRICK, TOWNSEND & STOCKTON LLP<br>Two Embarcadero Center, Suite 1900<br>San Francisco, CA 94111<br>Telephone: (415) 576-0200<br>Facsimile: (415) 576-0300<br>smoore@kilpatricktownsend.com<br><br>Kristopher L. Reed<br>(Eastern District of Texas Member)<br>KILPATRICK, TOWNSEND & STOCKTON LLP<br>2001 Ross Avenue, Suite 4400<br>Dallas, TX 75201<br>Telephone: (214) 922-7143<br>Facsimile: (214) 922-7101<br>kreed@kilpatricktownsend.com<br><br>Edward J. Mayle<br>(*pro hac vice*)<br>KILPATRICK, TOWNSEND & STOCKTON LLP<br>1400 Wewatta Street Suite 600<br>Denver, CO 80202<br>Telephone: (303) 571-4000<br>Facsimile: (303) 571-4321<br>tmayle@kilpatricktownsend.com<br><br>Melissa R. Smith<br>(Eastern District of Texas Member)<br>GILLIAM & SMITH LLP<br>303 South Washington Avenue<br>Marshall, TX 75670<br>Telephone: (903) 934-8450<br>Facsimile: (903) 934-9257<br>melissa@gillamsmithlaw.com<br><br>*Attorneys for Defendants* |

## CERTIFICATE OF CONFERENCE

Counsel has complied with the meet and confer requirement of Local Rule CV-7(h) and the motion is opposed. The personal conference required by this rule was conducted by telephone conference on February 24, 2022. The participants included Kris Reed for Defendants and Jeffrey Bragalone for Plaintiff. No agreement could be reached and the discussions have conclusively ended in an impasse, leaving an open issue for the court to resolve.

/s/ Melissa R. Smith

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a) on February 25, 2022, and was served via CM/ECF on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(b)(1).

/s/ Melissa R. Smith